In re COMMONWEALTH LIGHT & POWER CO.

In re INLAND POWER & LIGHT CORPORATION.

In re MISSOURI PUBLIC SERVICE CO.

GREEN et al. v. MISSOURI PUBLIC SERVICE CO. et al.

No. 5976.

Circuit Court of Appeals, Seventh Circuit.

Nov. 21, 1936.

R. B. Caldwell and H. M. Noble, both of Kansas City, Mo., for appellants.

Julius Moses, Stanley Morris, and R. Weyand, all of Chicago, Ill., for appellees.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

SPARKS, Circuit Judge.

The Missouri Public Service Company filed a petition for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The appellants, Green et al., filed a claim against the debtor for $102,214.69 and for the enforcement of a vendor's lien for that amount and interest, against certain electrical properties owned by the debtor, known and hereinafter referred to as the Liberal properties. Both the lien and claim were denied, and from that order of the court this appeal is prosecuted.

The controversy here presented arises out of the following facts, concerning which there is no material dispute.

Ozark Utilities Company, a Missouri corporation, was engaged, at the times herein referred to, as a general electric utility in ten counties of that state. It owned and operated electric power plants, transmission lines and distribution systems. Its total authorized capitalization consisted of 1500 issued shares of common, and 2500 shares of preferred stock, each having a par value of one hundred dollars.

In 1930 appellants owned, either in their own right or as beneficiaries, all the common stock of the Ozark Company, and more than two-thirds of the issued stock of the West Missouri Power Company, a Missouri corporation, which, in turn, on January 13, 1931, owned all of the issued preferred stock of the Ozark Company, amounting to 1404 shares, and also owned outstanding short term notes of the Ozark Company in the aggregate sum of $900,000.

The debtor, the Missouri Public Service Company, is also a Missouri corporation, and at the times herein referred to was engaged in the electric power and light business in western Missouri. In 1930 its properties were north of and contiguous to those of the Ozark Company, and its stock was then owned, through intermediaries, by the Middle West Utilities Company, a holding corporation, which did not own any physical properties and was not authorized to do business in Missouri.

F. E. Kruesi was vice-president of both companies last referred to. Henry L. Doherty & Company, at the times referred to, owned and operated a group of utilities among which was the Empire District Electric Company, a Missouri corporation, which in 1930 owned properties adjacent to and south of those of the Ozark Company.

The transactions out of which this controversy arose began with negotiations between Kruesi and appellants for the purchase of the stock of the Ozark Company. Kruesi intended to let the Middle West Company acquire any interest he might obtain. Afterwards, he learned that the Doherty Company was anxious to obtain an interest in the Ozark Company. In September, 1930, he wrote to the attorney for the Ozark Company: "We have agreed to let the Empire * * * Company * * * buy from us a large part of the Ozark Utilities Company." This was the first information that appellants had of that fact, and they were displeased, as they felt apprehensive about going into any transaction with the Doherty Company. In October, 1930, the attorney for the Ozark Company prepared for Kruesi a legal opinion with respect to the corporate powers and properties of the Ozark Company. This was submitted to the general counsel of the Middle West Company.

The principal contract herein involved was entered into by appellants and Kruesi on January 13, 1931. It provided for the sale and delivery by appellants to Kruesi of all the outstanding shares of common and preferred stock of the Ozark Company, and certain notes outstanding against that Company owned by the West Missouri Power Company, upon the terms and conditions therein set forth.

Appellants agreed:

(1) To deposit in escrow with the Commerce Trust Company of Kansas City, Missouri, 1500 shares of the common and 1404 shares of the preferred stock of the Ozark Company, which were all of the then outstanding shares, together with the notes of that company above referred to then owned by the West Missouri Power Company.

(2) To apply the payments received from Kruesi, first, to the payment to the West Missouri Company of the notes and the preferred stock so held in escrow, and then to the payment to appellants of the purchase price of the common stock.

(3) To deliver to Kruesi on January 15, 1931, the date set for closing the contract, proxies authorizing him, or his nominee, to vote all of the stock of the Ozark Company, during the time it remained in escrow, on questions of corporate business and procedure, and to deliver to Kruesi, on the closing date, the written resignations of the officers and directors of the Company.

(4) To furnish Kruesi with abstracts of title to all real estate owned by the Ozark Company, and its corporate books and records, leases, franchises, contracts and properties of every kind and character.

In consideration therefor, Kruesi agreed:

(1) To pay or cause to be paid to the escrowee for the account of appellants, the sum of $2,089,402 as the purchase price of the stocks and notes in escrow. An initial payment of $419,402 was to be made on the closing date, and the balance was to be paid in five equal annual payments which should bear six per cent interest per annum, payable semi-annually, until paid.

(2) Not to authorize or allow the Ozark Company, during the escrow, to incur any bonded or other form of funded

debt, not to substantially alter its capital structure, nor to transfer or convey any substantial part of its corporate properties, except the so-called Liberal properties (which constitutes the basis of this controversy).

(3) To deliver to appellants the written guarantee of the Middle West Utilities Company, for the full performance by Kruesi of his obligations under the contract.

The contract provided that in the event of a transfer or conveyance of the Liberal properties to Kruesi or his nominee, the escrow agent, at Kruesi's request, was to deliver to the Ozark Company that company's notes in escrow owned by the West Missouri Power Company equal in principal amount to the amount of the agreed purchase price to be paid by Kruesi, or his nominee, for the property transferred, and their notes to that amount were to be released from escrow.

The contract further provided that, upon full payment by Kruesi of the principal and interest therein stated, the escrowee was to deliver to him all of the preferred and common stock held in escrow, and also the notes likewise held, except such notes as might have been released from escrow to the Ozark Company in connection with the transfer of the Liberal properties, and Kruesi was to be vested with the title to such stocks and notes and all rights of ownership thereto. After the closing date, all accruing dividends on the preferred stock were to be paid to Kruesi.

Upon any default in payment by Kruesi as provided in the contract, all remaining amounts owed thereunder were to become immediately due and payable at the option of appellants; the escrow was to terminate; the proxies given to Kruesi were to become null and void; and the then officers and directors of the Ozark Company were to tender their resignations to appellants.

Kruesi and the Doherty Company entered into a contract on January 13, 1931, which was drafted by counsel for the Middle West Company. Neither appellants nor the attorney for the Ozark Company saw this contract before January 15, 1931. The contract recited that Kruesi had negotiated with appellants for the purchase of the outstanding common and preferred stock of the Ozark Company. In it Kruesi agreed:

(1) To execute the Green-Kruesi contract for the joint benefit of himself and the Doherty Company, each to own an undivided interest therein in proportion to the amount each was to pay of the entire purchase price payable by Kruesi under the Green-Kruesi contract.

(2) To pay the balance of the purchase price due under the Green-Kruesi contract for all of the outstanding shares of stock of the Ozark Company, such balance being the amount by which the entire purchase price exceeded the amount that the Doherty Company was to put Kruesi in fund with, as set forth in the Kruesi-Doherty contract.

(3) To elect nominees of the Doherty Company as a majority of the board of directors and as officers of the Ozark Company, pending conveyance of the Liberal properties.

The Doherty Company agreed:

(1) To pay such percentage of the purchase price due under the Green-Kruesi contract as the gross earnings derived by the Ozark Company for a stated twelve-month period from the property of that Company, other than the Liberal group, bore to the total gross earnings of the Company for that period (which was approximately eighty-five per cent); and to pay the value of all additions made after October 20, 1930, upon the properties of the Company, exclusive of the Liberal group.

(2) To turn over to Kruesi on or prior to the date of the installments to be paid by him under the Green-Kruesi contract, that portion of each which the Doherty Company had agreed to pay.

The contract also provided that Kruesi was to receive the Liberal properties in liquidation and satisfaction of all of his interest in the Ozark Company under his contract with appellants, and the remainder of that company's property was to belong to and be received by the Doherty Company in liquidation and satisfaction of its interest, and was to be given it either by conveyance or through ownership of all of the outstanding stock of the Ozark Company. The Liberal properties were to be conveyed to Kruesi by the Ozark Company as soon as possible, consistent with the Green-Kruesi contract, and pending such transfer Kruesi was to have control and operation of those properties and the net earnings therefrom.

On January 14, 1931, Kruesi executed a declaration of trust, stating that he held the Green-Kruesi contract in trust for the benefit of the Middle West Utilities Company.

On January 15, 1931, the Green-Kruesi contract was closed in the offices of the escrowee. Two notes of the Ozark Company, payable to the West Missouri Power Company, for $271,600 and $702,500 respectively, together with 1500 shares of the common stock and 1404 shares of the preferred stock of the Ozark Company, were delivered in escrow as agreed. The Middle West Utilities Company paid to the escrowee $419,402, as the initial payment due under the Green-Kruesi contract. Part of the amount thus paid had been received by the Middle West Company from the Doherty Company on account of its obligation under the Kruesi-Doherty contract. The initial payment was then applied in payment of the note for $271,600, and in part payment of the note for $702,500, leaving a balance due on the latter note of approximately $554,925. The officers and directors of the Ozark Company thereupon resigned, and in their place there was elected a board of directors consisting of four representatives of the Doherty Company and one representative of the Middle West Company.

In the latter part of January, 1931, one Patterson, who had acted as attorney for appellants and the Ozark Company, was directed by Kruesi to take the necessary legal steps for transferring the Liberal properties to the Missouri Public Service Company. Thereupon, in April, 1931, Patterson drafted a petition to be submitted to the Public Service Commission of Missouri, seeking its approval of the proposed transfer, in compliance with the requirement of a statute of that state. By it, the Missouri Public Service Company and the Ozark Utilities Company made joint application, averring that the Ozark Company proposed to convey and transfer the Liberal properties to the Missouri Public Service Company in return for outstanding preferred stock of the Ozark Company, of the par value of $250,000, and certain outstanding notes of that company in the amount of $69,711.94, which stock and notes were to be cancelled upon receipt by the issuing company. The Missouri Public Service Company did not then own such stock and notes, but had an agreement with the holders thereof either for their purchase or for their delivery to the Ozark Company. The record before the Commission disclosed that, in order to avoid a capital gains tax, it was proposed that the Ozark Company, before making the transfer of the Liberal properties, issue additional preferred stock in consideration of certain of its outstanding notes, which stock, rather than the notes, would be used in part purchase of the Liberal properties.

On November 5, 1931, the Commission entered an order allowing the application. The order recited that the Ozark Company proposed to issue 1096 shares of preferred stock at par, in retirement of an equal amount of outstanding notes, and thus reduce its outstanding notes to $864,500; that the company further proposed to sell the Liberal properties to the Missouri Public Service Company for $319,711.94, which proposed to pay for the same by delivering to the Ozark Company $250,000 of the Ozark Company's preferred stock, and $69,711.94 of that company's outstanding notes, which stock and notes the Ozark Company proposed to cancel when received. The order of the Commission authorized the sale of the Liberal properties for the consideration named.

On December 14, 1931, appellants and Kruesi modified their original contract of January 13, 1931, by a supplemental agreement which incorporated the provisions of the Commission's order and provided that the escrow agent, upon the request of Kruesi at the time of any transfer and conveyance of the Liberal properties as provided in the original contract, should deliver 2500 shares of the Ozark Company's preferred stock, and notes of that company payable to the West Missouri Power Company in the principal amount of $69,711.94, to the Ozark Company, in payment of the purchase price for the Liberal properties transferred to Kruesi or his nominee.

On the same day, a memorandum agreement was entered into by Kruesi and the Ozark Company which provided that Kruesi was to surrender to that company, for cancellation, 2500 shares of its preferred stock and $69,711.94 of its outstanding notes, and thereupon that company was to convey to Kruesi or his nominee the Liberal properties.

On January 14, 1932, Kruesi and the Missouri Public Service Company entered

into a memorandum agreement which, after reciting that Kruesi was authorized to purchase the Liberal properties on the terms last above set forth, and that the Missouri Public Service Company desired to purchase the Liberal properties, provided:

(1) That Kruesi, at the earliest convenience, would transfer such stock and notes to the Ozark Company.

(2) That he would cause the Liberal properties to be conveyed and transferred to the Missouri Public Service Company.

(3) That that company would pay to Kruesi $328,109.26, payable $72,572.54 upon delivery, and the remainder in five annual installments of $51,107.34 each, beginning January 15, 1932, with six per cent interest per annum until paid.

In December, 1931, the board of directors of the Ozark Company, by proper resolution, directed its officers to issue the stock and to convey to the Missouri Public Service Company the Liberal properties, as authorized by the Commission and contemplated by the contracts.

On January 13, 1932, the Ozark Company executed a bill of sale to the Missouri Public Service Company for the Liberal properties, setting forth that the grantor "did grant, sell, transfer and deliver" to the grantee (1) electric distribution systems and street lighting systems with substations and appurtenant property in certain named cities; (2) electric transmission lines and appurtenant property in certain described territory; and (3) all rights, privileges, contracts, franchises and permits held and possessed by the grantor in connection with said utility properties. The instrument covenanted that the grantor was the lawful owner of the goods and chattels thus sold and delivered.

The first payment of $419,402 to be made to appellants under their contract with Kruesi was paid on January 15, 1931, by the Middle West Utilities Company. Of this amount, approximately eighty-five per cent was furnished Middle West by the Doherty Company, as provided in the Kruesi-Doherty contract. One year later, when the Liberal properties were transferred to the Missouri Public Service Company, the latter company gave the Middle West notes for an amount equal to that theretofore paid out by Middle West on January 15, 1931, which was approximately fifteen per cent of the entire initial payment.

The semi-annual interest due appellants on July 14, 1931, and the annual payment due them on January 15, 1932, were paid by checks of the Middle West Company to the escrowee. Prior thereto, however, the Doherty Company put Middle West in fund of that portion of each installment which it had agreed to pay to Kruesi, and the notes above referred to, given by the Missouri Public Service Company to the Middle West Company, included the amount of these two installments paid by Middle West. Thereafter, the Middle West Company went into receivership and it made no further payments under the Green-Kruesi contract. The annual payments due thereunder in January, 1933 and 1934, and the interest payments due in July, 1932, 1933 and 1934, were made by the Missouri Public Service Company and the Doherty Company. From the record, we assume that the Doherty Company paid approximately eighty-five per cent of the installments of principal and interest subsequently falling due, and it is admitted that there still remains due appellants on the Green-Kruesi contract, $102,214.69, with interest.

It is contended by appellants that the facts recited in substance present a transaction wherein the physical properties of the Liberal group were sold by appellants to Kruesi, and that a vendor's lien should be enforced against those properties. They urge that all the contracts between the various parties involved in the entire transaction should be construed together, and when this is done, they show that Kruesi was not to have any interest in stock, for that was to go to Doherty; that Kruesi was buying, and was to get, only the physical properties of the Liberal group, comprising about fifteen per cent of the properties of the Ozark Company, for which he was to pay $319,711.94 in installments, and that upon the effective date of the contracts, the lien in favor of appellants attached, and remained in force when the debtor acquired title at Kruesi's direction and with knowledge of the unpaid purchase price.

Although the Green-Kruesi contract recites that the stock was to be held in escrow, yet appellants contend that when it is read with the Kruesi-Doherty contract, the two together show that this provision, as well as the one relating to non-impair-

ment of stock, related only to Doherty, and neither was intended as security to appellants for Kruesi's obligations or those of his principals.

It is obvious that appellants' theory upon which their right to a vendor's lien is based, depends upon the following postulates:

(1) The corporate identity of the Ozark Company should be disregarded and the transaction viewed, not as a sale to Kruesi of stock and notes, but wholly as a sale of utility property owned by appellants.

(2) The original Green-Kruesi contract with the supplemental agreement of December 14, 1931, may not be considered alone as determinative of the parties' rights, but into them must be read the terms of the Kruesi-Doherty contract, and the transaction between appellants and Kruesi must be considered, not as a sale of stock and notes, but as a sale of the Liberal properties; and that the consideration must be held to be, not as stated in the Green-Kruesi contract, but $319,711.94, payable in an initial installment of $64,175.22 and in five subsequent annual installments of $51,107.34, not affected in any way by the escrow deposit.

(3) The Liberal properties were never fully paid for, and there remains due on the purchase price an unpaid balance of $102,214.69, with interest, owing to appellants as sellers of those properties which are to be considered in the nature of realty, or if chattels, as unique chattels, and subject to a vendor's lien in any event.

■ It may be stated as a general rule that, ordinarily, corporate existence can not be disregarded. In Re John Koke Company (C.C.A.) 38 F.(2d) 232, 233, the court said, "The rule is quite elementary that a corporation is an entity separate and distinct from its stockholders, with separate and distinct rights and liabilities; and this is true even though a single individual may own all, or nearly all, of the capital stock. True, courts, in exceptional cases, will look behind the corporate form in order to redress fraud, protect the rights of third persons, or prevent a palpable injustice; but there is no reason for invoking any such exceptional rule here, because it is not claimed that there was fraud, concealment, or even ignorance of any material fact in the original transaction." See, also, Pierce v. National Bank of Commerce (C.C.A.) 13 F.(2d) 40, and Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 S.W. 74.

In determining whether or not the facts in the instant case warrant a departure from the general rule, we can not be guided alone by the facts as they exist now, but due consideration must be given to the facts and circumstances as they existed at the time the Green-Kruesi contract was negotiated, in order to arrive at the intention of the parties. The appellants owned all of the common stock of the Ozark Company, and more than two-thirds of the stock of the West Missouri Power Company, which in turn owned all of the issued preferred stock of the Ozark Company and certain of the latter company's outstanding notes. As such stockholders, the appellants had no right to sell any of the physical properties or assets of either company. They could sell nothing but their stock in the Ozark Company, and it is obvious from their contract with Kruesi that this is all they essayed to sell. True, that contract provided that Kruesi or his assignees should also receive the preferred stock and certain note obligations of the Ozark Company, but it is worthy of note that appellants did not agree to sell or transfer those items to him. They merely agreed to cause those items to be sold and transferred to him or his nominee, thus clearly recognizing and observing the corporate entities involved.

It should be noted further that not one word was said between appellants and Kruesi concerning the sale and transfer of any of the physical properties of the Ozark Company, and appellants had no knowledge that such a thing was contemplated until Kruesi notified them in September 1930, "We have agreed to let the Empire District Company, which is the Henry L. Doherty & Company subsidiary to the south of the Ozark Utilities Company, buy from us a large part of the Ozark Utilities Company." (Our italics.) This information was displeasing to appellants on account of some aversion they had to the Doherty Company. It is fairly inferable from the record that at that time the terms of the sale by appellants to Kruesi had been agreed upon, and they did not contemplate a sale by appellants of any of the company's physical properties. This conclusion is supported by the fact that, notwithstanding appellants' ap-

prehension with respect to the Doherty Company, the Green-Kruesi contract was reduced to writing and signed on January 13, 1931, and still it did not contemplate the sale of anything but stock and notes. True, the contract provided that in the event of a transfer or conveyance of the Liberal properties to Kruesi or his nominee, the Ozark Company's notes should be released from escrow. It will be observed that that provision related to an act which might or might not be performed in the future by the Ozark Company, and not by appellants, nor was it dependent upon their consent. Appellants' agreement to release the notes in escrow, and later the preferred stock in case of a future transfer by the Ozark Company of the Liberal properties to Kruesi, was merely to enable him and his nominee to accomplish the purpose of the Green-Kruesi contract, which was the sale of the appellants' common stock.

The plan as adopted by the parties was fair and equitable. There was no charge of fraud, no palpable injustice, ignorance of facts, or any other circumstances which heretofore have been considered by the courts as a sufficient reason for disregarding a corporate entity. At that time, so far as this record discloses, Kruesi was solvent and financially able to carry out his part of his contract with appellants. As additional security, however, appellants required that the stock and notes which they agreed to sell, or would cause to be sold, should be placed in escrow, and they required and accepted the written guarantee of the Middle West Utilities Company that Kruesi would perform his part of the contract. That company at that time was considered by appellants as solvent and as ample security for the purchase price of the stock. Their conclusions in this respect proved to be sound. The entire consideration of $2,089,402 was paid, except for two installments of $51,-107.34 each, due on January 15, 1935, and 1936, with accrued interest. On January 15, 1935, both Kruesi and the Middle West Utilities Company were hopelessly insolvent, and defaulted in payment. Up to this time, so far as this record shows, appellants had never claimed nor intimated that the Missouri Public Service Company was obligated for Kruesi's debt. They made no such claim until February, 1935, which was after the first default, when they instituted suit against the debtor in a state court of Missouri to impress an equitable lien upon the funds of that company for the amount due and defaulted in January, 1935. That court impounded certain funds of the debtor to protect the claim pending its determination, and the action is still pending. On February 21, 1935, the debtor filed a petition for reorganization under section 77B of the Bankruptcy Act, and on October 31, 1935, the appellants filed proof of their claim, and asserted a vendor's lien against the Liberal properties.

Under the circumstances enumerated, we find no valid reason for disregarding the corporate identity of the Ozark Company, for the purpose of changing the expressed and unambiguous subject matter of the sale. That appellants were a family group and owned all of the common stock of the Ozark Company is admitted, but that they treated the company as a mere agency or instrumentality is not fairly supported by the evidence. On the contrary, the negative of that contention is amply supported by substantial evidence. Nor do we think it fair and reasonable to consider and construe all the contracts as one for the purpose of determining the intention of the parties. To do so would create ambiguity where none existed before. The parties, the subject matters and the purposes of these contracts were different. In the Green-Kruesi contract the mutual purpose was the sale and transfer of corporate stock, for the payment of which appellants accepted what they regarded as sufficient security. The mutual purpose of the other contracts involved was a division of the assets and stock of the corporation whose stock appellants sold to Kruesi. In this purpose, appellants were not interested, for they had no knowledge of it until after the terms of their contract with Kruesi had been agreed upon. They did not materially interest themselves in that division until after their security for the payment for the stock by Kruesi had failed, when they contended that in reality they had not sold the stock to Kruesi, but had sold the Liberal properties to him. If this contention is to prevail, we must disregard the corporate entity of the Ozark Company.

Appellants contend that the debtor has received and retained the Liberal properties without having paid for them. This fact, if true, might well actuate the court, under certain circumstances, to disregard

 

the corporate entity, under the theory that a palpable injustice had been done. The record discloses, however, that the Ozark Company agreed to sell the Liberal properties to Kruesi or his nominee, for 2500 shares of that company's preferred stock, and $69,711.94 of its outstanding notes; that Kruesi and appellants agreed that upon Kruesi's request, the escrow agent should release from escrow and deliver to the Ozark Company, the 2500 shares of preferred stock, and $69,711.94 of notes in payment of the purchase price for the Liberal properties transferred to Kruesi, or his nominee; that Kruesi agreed with the Missouri Public Service Company that, for a stated consideration, he would designate it as nominee to receive the Liberal properties; that the board of directors of the Ozark Company, by resolution, directed its officers to convey the Liberal properties to the Missouri Public Service Company, in consideration of the surrender to the Ozark Company of the 2500 shares of its preferred stock and the $69,711.94 of notes; that the Missouri Public Service Commission ordered and directed the sale to be made for the consideration named and it was done. Under these circumstances, it is obvious that the Missouri Public Service Company fully paid for the Liberal properties.

We are convinced that the District Court properly ruled that the sale of the Liberal properties to Kruesi by the Ozark Company, or the sale of the common stock by appellants to Kruesi was not a sale by appellants to Kruesi of the Liberal properties. Hence, the District Court was right in holding that appellants were not entitled to a vendor's lien upon those properties, and that they were not general creditors of the Missouri Public Service Company.

If it be conceded, however, that appellants sold the Liberal properties, instead of the stock, to Kruesi, and that it was property of such character as might be subject to a vendor's lien, which it is not necessary to decide, we think appellants must be considered as having waived their right to a vendor's lien. Whether the subject matter of the Green-Kruesi contract was stock or property, the performance of that contract by Kruesi was secured by a deposit in escrow and by the guarantee of the Middle West Utilities Company. They voluntarily released from escrow the notes and stock which they

knew were being exchanged for the Liberal properties. They permitted those properties to become a part of the assets of the debtor, and to remain so for more than three years. The debtor is now in process of reorganization under the Bankruptcy Act, and equity at this late day would not be warranted in enforcing a vendor's lien in appellants' behalf, to the detriment of the creditors of the corporate debtor.

Decree affirmed.